Case number 09-0818, Peeble v. Joseph Costa. Good morning. Good morning. Kristen Muller, assistant appellate defender, along with Mr. Costa. Muller. Carol Gaines on behalf of the Peeble. Gaines. Good morning, both of you. All right. Muller, you may proceed. There's several issues before the court. I would like to address the second and third issues in my brief, but of course we'll answer any questions you have. And may I reserve three minutes for rebuttal? Yes. As to the second issue dealing with the unanimous jury verdict, the Constitution requires that jurors be unanimous in convicting defendants on specific illegal conduct. Here the state charged Mr. Costa with three counts of violating an order of protection. First, driving by Pamela's office on April 19th. Second, driving by Pamela's residence on April 13th. And third, following Pamela and attempting to enter her condo building on April 17th. However, the jury was not given any dates in the jury instructions and they were invited to pick from any of the three propositions. First, driving to Pamela's office. Second, driving by Pamela's residence. Or third, following Pamela. Similarly, the state charged Mr. Costa with aggravated stalking for following Pamela or placing her under surveillance. On February 20th, by following her into the elevator at her condo building. On February 22nd, by parking his car outside the building and following her, and based on the aggravating factor of violating an order of protection. But again, the jury instructions did not contain any dates and the jurors were invited to face guilt on finding at least two separate occasions of following or placing Pamela under surveillance. Since they needed two separate occasions, how many jury instructions did you want the jury to have? A combination of all the different dates where it would have ended up being like nine different jury instructions. And then once they filed, once they signed all nine of them, then you would have started arguing that it was the same one act, one crime. Didn't the jury have a chance to do that under the one instruction? I believe, Your Honor, they needed to at least be instructed that they needed to be picking separate acts, occurrences, transactions. If the jury had picked all three as they did in the one jury instructions, then what would you be arguing? If that was clear, that they had all 12 unanimously picked all three, then I wouldn't have a problem. I wouldn't be raising this because then there would be a unanimous jury verdict on specific conduct. But here we don't know if two of them decided on the first proposition following her on a certain date, or maybe six of them decided a different one and then they're not unanimous. They're not all in agreement which the Constitution requires them to be on something specific, a certain conduct. Additionally, the jury instructions. Isn't the general principle, though, that unanimity is required on the actual offense and not under different theories or dates? Correct, Your Honor. Isn't the issue whether the state established the elements of aggravated stalking and or the violation of the order of protection? Isn't the constitutional requirement and basically Illinois case law following that that it is not unanimity on the method of the offense or various theories, but like on two of these three days he impermissibly followed her or what have you? But at the end of the day, isn't the requirement that the jury find that the aggravated stalking was proven guilty beyond reasonable doubt, not the individual theories under which the offense could be committed? When you're speaking of theories, methods, you're correct. I agree with you. As to, for example, the mens rea with first degree murder or maybe with aggravated criminal sexual assault that was committed with a weapon, as long as the evidence showed that it was committed with a weapon, the jury doesn't need to be unanimous on convicting under subsection A1 on use of a weapon or A3 of that statute threatening the life. As to that, yes, I agree with you. But this is different in that we're talking about separate conduct and separate transactions like the Scott. How do you square that argument with the result in the Reynolds case? In the Reynolds case, the situation where there was allegations over many separate dates, many different offenses and those were all lumped together into four separate instructions with regard to four separate different crimes and that was upheld. But if there's separate instructions and separate conduct, then the jury is reaching a unanimous verdict. But that's not what happened in the Reynolds case. What's happened in the Reynolds case is that what the trial judge did was the trial judge divided it up and gave a single instruction with regard to, for example, aggravated sexual abuse, with regard to pornography, with regard to obstruction of justice. But within each one of those, there were separate incidents that were all lumped together. And it was over a significant period of time and that was affirmed. Isn't this really a situation where there are cases on both sides of this issue and you're going to ask us to take one side or the other? Isn't that what it is? Because you have the Reynolds case, you have the Rand case on one side, and you have the Scott case on the other side. Isn't that really what this is going to come down to? I think it comes down to distinguishing the difference between methods of committing an entire complete offense and different separate offenses that can be separately charged. In this case, Mr. Costa was separately charged. The jury wasn't instructed in that realm. Well, Mr. Reynolds was indicted on 24 counts. And all that went to the jury, by the time it went to the jury, there were 12 counts, four separate kinds of offenses, and there were just four instructions. And that was affirmed. So what I want to know is how do you distinguish the Reynolds case? I think I interrupted you. How do you distinguish the Reynolds case from the position that you're taking? I believe, Your Honor, that it comes down to if all of these acts can form a complete, multiple complete offenses. Like, for example, in the Rand case, there was just simple stalking and there was three acts, three dates involved. It couldn't, because stalking requires the two acts, they could pick maybe from any one of those three and the court didn't find a problem with it, but there was nothing else that could happen in that situation. There wasn't any other charges pending against him where he could be convicted of additional stalking offenses. There weren't four dates to make up additional stalking offenses. It wasn't implicating the specific product. But you could apply the argument that you're making to the Rand case, couldn't you? I mean, in the Rand case, there were three separate instances of stalking charged and there had to be two in order to get a conviction. And the way the jury was instructed, the jury didn't have to tell the court which of the two they were picking, but according to your theory, six of the, let's say that there was stalking one, two, and three, six of the jurors could have said, I find beyond a reasonable doubt stalking one and two, and six of the jurors could have said, I find beyond a reasonable doubt stalking two and three. Isn't that the theory you're putting forward? Well, I do think it's distinguishable in the fact that there wasn't a risk that other convictions could be entered because there was only the three acts. But I do believe, to I guess answer your original question, that it was decided before People v. Holmes, the Illinois Supreme Court decision. And in that regard, I don't think that it is correctly decided. Holmes made clear. What's not correctly decided? Rand. What about Holmes? That's really kind of a different case. The Supreme Court determined that both offenses had not been proven beyond a reasonable doubt. There's no question that that case was, well, I think it's really different. If you recall, that involved a gentleman from Indiana who was a resident of Indiana who had a permit for a gun, who was in Illinois on Mother's Day, went to his mother's home to deliver Mother's Day presents. He had been out that day having dinner with his own wife and family, and he's going back to Indiana. And he has a gun in his car that he is fully permitted to have in Indiana. And it's in the back. There was a back case in that between the two seats. And in that case, which was, I think, referred to as maybe locked, it was definitely contained. The police officer that stopped him said he stopped him for, I think, improper lane usage. I could be wrong. But the long and the short of it was that that gentleman, when he got out of the car at some point, told the officers there was a gun in the car. So in that case, he gets arrested and he's charged with UUW on two different theories. One, that he doesn't have a proper FOID card, and the other, that it wasn't encased or closed or whatever. So in that case, the Supreme Court first determined that there was not proof beyond a reasonable doubt that he had a gun without carrying an FOID card because of the exception in the statute that allows people who are from other states to come through Illinois. If they are permitted to have the gun in their state, then coming through Illinois doesn't mean that they're going to be guilty of a UUW for not having a FOID card. And the Supreme Court then concluded that on the other section about it not being encased or easily accessible, and excuse me if I don't have the exact elements, but then they went on, and I may have the order wrong, they also concluded that there was not proof beyond a reasonable doubt on that offense. And then when the state requested a finding of the misdemeanor, they concluded that that could not stand either. I don't really see that case similar to these at all. Your Honor, it's similar when in the last part where you're discussing the Supreme Court rejected the state's request to find a lesser included misdemeanor offense because the two subsections of that statute that would provide exceptions implicated the two aggravated factors that they just found there wasn't proof beyond a reasonable doubt. And they said, well, we can't assume that the jury entered the original conviction unanimously on this one aggravated factor, uncased, immediately accessible, or on the other factor didn't have a FOID card because we can't tell if they were unanimous on one or the other. We can't enter this here because it implicated those factors. There's definitely an analogous situation. That's a situation where you're already up in the reviewing court, and since you lost the first argument, and since the state lost the first argument, they asked, well, you can find the lesser misdemeanor offense. And all they were saying there is we can't say for sure which of the lesser misdemeanor offenses was found guilty beyond a reasonable doubt, so we declined to do so. Is that really analogous to the situation we have here where you have this well-accepted theory in the case law that says that unanimity is not required with regard to the underlying elements of the offense, just with regard to the jury verdict? Yes, Your Honor. Or do you think that the Holmes case throws that whole line of cases out? The Holmes case says it speaks to the requirement of a unanimous jury verdict. You can't tell, we can't hypothesize. It doesn't really just speak to the situation. A very unique situation where the reviewing court is throwing out a conviction and trying to find a lesser-included offense. Isn't that a somewhat more unique situation? The reason that they couldn't enter the lesser-included offense, as requested, is because the jury verdict was a general jury verdict, and it implicated whether those exceptions to the misdemeanor UUW would apply. I'm sorry. Just that the trial court did not allow the Indiana permit to even be introduced to the jury. So they couldn't find. They could have found them guilty of violating it, but there was a big piece of evidence that wasn't even allowed in. So you couldn't even come close to a verdict on that. Right, they said that it was prejudicial error. True. And at the same time, they still concluded that they just couldn't hypothesize what the jury found. But here we have them guilty. At least three elements, or three drive-bys or stopping or whatever, that the jury has evidence of. But we don't know that they all agreed on one. Some of them said, this happened, I'm not sure that this happened, I didn't believe the testimony from one of her bodyguards, maybe this one happened. And maybe six other ones found that the bodyguard was credible and they believed that this one happened. They have to all 12 agree that at least one of these happened, and that's what we can't tell. Here's my concern. We all agree that count one should have been switched to count two. If we do agree that it should be count two as a guilty verdict, is it a lesser-included offense? Once we say that it's both aggravated stalking for violating an order of protection, is the second count then included, a lesser-included offense? Is the violation of an order of protection, yes, Your Honor. As to the third argument that I raised under the One Act, One Crime Rule, yes, I do believe that it is. And that is because of this general jury verdict. And we can't tell which offense, which date they used. Had the state used more specific instructions, and we could tell, okay, in the aggravated stalking instruction they said on this date or by this behavior he violated the order of protection, then two convictions could stand, two separate convictions. But because that didn't take place here, we can't be certain. And the same one could have been used. What was the violation of the order of protection offense based on? The conviction? Well, the charge. The three charges, there was driving past Pamela's office on April 19th, driving past her residence on April 13th, and following and attempting to enter her condo building on April 17th.  But your argument is that under the One Act, One Crime Doctrine, because the aggravated stalking was based on a violation of an order of protection, that the subsequent jury finding of a violation of the order of protection is subsumed and that he should only be, there should only be a conviction entered on the aggravated stalking. Correct, Your Honor. Because it's a lesser included violation of the order of protection? Yes, as charged in this case. Based on the general verdicts? Exactly, yes, Your Honor. And as to the unanimous jury verdict argument, based on the Illinois Supreme Court's decision last Thursday in People v. Lloyd, we have changed our request for relief and are arguing that Mr. Acosta's, those two convictions should be reversed outright. Which two convictions? Sorry, the aggravated stalking and the order of protection violation. Well, what is Lewis, how is the argument that Lewis would suggest that? I'm sorry, People v. Lloyd. Terry Lloyd, sorry. That's the decision where the Supreme Court found that that one section of 512.13a, I think, that the state had not established. They reversed seven convictions of aggravated criminal sexual assault outright. They acknowledged that the state never established that the defendant knew that P.V. was unable to understand the nature of the act or give knowing consent. Yes. Similar to this case where there is some felonious conduct that is proven. The court said it wasn't what was charged under the statute at hand. But why is that analogous to this situation? That's uncharged conduct. We're not dealing with a situation where there's uncharged conduct. They said in Lloyd, we can't go to the other subsection that deals with under the age of 17 because that's uncharged conduct. That's not the situation. We have charged conduct here. I think it's analogous, Your Honor, because in this case the state inundated the jury with basically a year's worth of conduct from February 2006 to December 2006. They were inundated with so many dates and so many acts they could have picked any. We don't know what they picked because of the jury instructions, because they weren't told specifically what they need to decide on. They weren't told to choose separate offenses. Well, we at least know that they picked out of the three that they were instructed. But because of the lack of specificity, that could have been anything. We simply don't know. And they were, in fact, invited to pick from any of the three in the state's closing argument. They weren't even told that they have to all come to an agreement. So in that regard, I'm not saying that it's exactly on point. Are you saying that because, for example, the term drove by her house or residence is so general that you think that there should be a requirement that there should be a date in there in the instruction? Well, not exactly, Your Honor, because in this case there were so many different incidents, so many different occasions presented to them. That's what makes the issue here, the problem here, because they need to all agree that at least one of those happened to fulfill the violation of an OP, and then two more for the aggravated stalking conviction. And even the jury instructions were confusing. They said place under surveillance can be any of the above. It can be driving by the home, driving by the office, or being outside any place where Pamela occupied. So in that regard, the Lloyd case said we can't hypothesize that a guilty verdict was rendered no matter how inescapable the findings to support the verdict might be, because that would violate the jury trial guarantee. They're saying we can't hypothesize what the jury might have done or might have did. It has to be there. My client has a right to know that he's convicted on specific illegal conduct, and of course this implicates other concerns besides the unanimous jury verdict. If he were ever charged again in this case, he couldn't really raise a double jeopardy argument, because he doesn't know exactly specifically what he was convicted upon in this case. So in that regard, we're asking that the convictions be... What about the fact that, I guess we might as well talk about this now, what about the fact that this whole claim is forfeited? I'm sorry? Isn't this claim all forfeited? Nobody objected to these jury instructions, did they? So why should we jump into this? The law is pretty clear that under the plain error rule, when there's substantial defects with the jury instructions, you can review it under the second prong of the plain error rule. That's the Scott decision and also Supreme Court Rule 451C. But if there's all these cases out there that say that Scott is wrong, how does this make it a clear and obvious error that so infected the jury trial proceedings that your client was denied a fair trial? The burden of persuasion rests with you, but there's other authority, certainly Rand and even this Reynolds case, that suggests what you're arguing is not a clear and obvious error, because unanimity is not required under theories or methods or dates. It's required for the elements of the offense beyond a reasonable doubt, that the jury has to conclude he committed the offense beyond a reasonable doubt, not that the days on which the state is suggesting he violated the order. I would respectfully disagree, Your Honor. The law is as to methods, which is discussed as mens rea, or the specific transactions, like the drug transactions. But you in Rand, it was an actual stalking offense, and there were three dates provided to the jury, and they had to conclude that on at least two of those dates he committed, he stalked or he followed her. So I don't know. I mean, it seemed to me that they specifically addressed what you're suggesting. You're saying it because it was just one discrete offense that makes it different. If I understand your question correctly, yes. This is, as to violating an order of protection, that is one complete separate whole offense, and each of these dates could be separate offenses. He could be convicted in three different convictions for violating an order of protection. So yes, that is completely different for aggravating stalking, or the stalking charge. It wasn't aggravated stalking. It was stalking. Yes. Just need the two, and there wasn't a risk in that case of multiple convictions because you would need more acts to even satisfy stalking, much less an aggravated charge. So in that regard, it's different in this case, and I also think that the Holmes and the Scott's decisions are more important, especially Scott, and even the Diaz court, which Rand relied upon, pointed out that crimes such as aggravated battery, it speaks to what you're talking about. It's not a separate transaction, but they specifically pointed to the Scott case, and they said that involves three different transactions. So that is an issue there with the unanimous jury verdict, whereas with aggravated battery, it's kind of like the aggravated criminal sexual assault. And I think we understand your argument. What about the minute trial? Your Honor, I submit that maybe some other crimes evidence should have been admitted, but it went way too far here. It was excessively detailed. Did they allow them the 2010 phone calls? I would argue no, but if so, not at the extent. And what about running down the police officer with his car? There just simply did not need to be the amount of detail, Your Honor, that was what he was hypothesizing. Costa was allegedly thinking when he allegedly made these phone calls. It was way too much. It was inflammatory, and it was prejudicial. The cases look at the volume, the amount of detail that is presented, how it's presented, the manner is demonstrative evidence used. Here, four of the eight trial witnesses testified about other crimes evidence. Two of the three trial exhibits were other crimes evidence, and they were both the demonstrative exhibits. It was completely excessive. The limiting instruction was given before the first witness was called. It wasn't given right before the other crimes evidence was presented. And just in light of the evidence in this case in general, February to December of 2006, it was overwhelming. It was simply too much. It was confusing, and it was him just being overwhelmed by this evidence, thinking he was generally a bad guy and we want to do something here. And that is exactly what the law requires a trial judge to prevent against. Anything further at this time? I'll just reserve for everybody. Thank you. Ms. Gaines. Good morning, honors. May it please the court. My name is Carol Gaines, and I represent the people of the state of Illinois. With respect to the unanimity requirement, as your honor pointed out, this issue was forfeited. It was not objected to. It was not included in a trial. And as a result of that, the defendant cannot show plain error in this case. There was nothing wrong with the general verdict form as it was instructed. And in fact, the use of that general verdict form was beneficial to the defendant. In what way? Well, in the way that the defendant was, because he was charged with three counts of violating an order of protection, had the state in fact instructed the jury separately on each and every one of those violations, and jury had found him guilty of each and every one of those violations, he would have been subject to consecutive sentencing on each and every one of those violations of an order of protection. There's no question that the evidence was overwhelming with respect to every one of those. So you gave him a break, did you? Well, it might have been a focus of what his trial attorney, who is a seasoned, experienced criminal defense attorney, may have had a reason for not offering alternative verdicts, for not offering alternative verdict forms, and for not objecting to the way in which the jury was instructed. Is it mandatory consecutive for the violations of the order of protection, or are you saying that based on the courts imposing consecutive under B? Right. It's not mandatory. But this trial judge, as well as other trial judges with respect to the defendant's charges with respect to all of these cases, found that because the defendant was so dangerous, so dangerous to his victims, her family, the prosecutors, the police, the judges, everyone he came in contact with, with respect to these charges and these cases, he was subject to consecutive sentencing. And he's received consecutive sentences, and it's very possible, it's not mandatory, but it's possible and likely that had he been convicted on three separate counts of violating the order of protection, he would have been subject to consecutive sentences. Well, how would you defend against the argument Ms. Mueller is making that in murder, where we have either knowing, intentional, or during the course of another felony, and then like the aggravated battery case where one was based on an injury and one was based, I think, on using a weapon, one of these cases. How do you distinguish or say that those are exactly the same as this case when you're dealing with acts that occurred on separate occasions? There is somewhat of a difference, isn't there? There is. And there are, as Justice Palmers pointed out, there are really two different kinds of cases that talk about whether or not factually the issues that you have in considering the conduct that occurred, whether or not that's treated as methods by which you can commit offense, or it's, you know, separate mental states with respect to the unanimity requirement. The fact is that because unanimity only requires that the verdict be unanimous in terms of the ultimate conclusion, whether or not the defendant's guilty of the offense. There does not have to be unanimity within the manner in which the offense is committed. The Mel Reynolds case illustrates that perfectly, and the Rand case does as well, that in fact, you can have multiple ways, multiple means in which an offense is committed, and the jury does not have to be unanimous with respect to those multiple means. Go ahead, Justice Palmer. I don't think there's any way you can square the Reynolds case with the Scott case, other than to say that there's two different lines and we have to follow one or the other. Would you agree with that? I think the difference is... Would you call the Scott... Well, go ahead. In Mel Reynolds, sort of the same thing here. You have one order of protection, you have one victim who's the subject of that order of protection, you have one defendant who's accused of violating the order of protection, and you have multiple ways in which he's alleged to have committed that. In Reynolds... In a continuing course of conduct. If you will. I mean, the continuing course of conduct... Or a series of related transactions. Correct. I know continuing course of conduct is a funny phrase for sentencing, but in a series of related transactions. Correct. And again, that goes to the fact that there's just one order of protection that's been violated. There's different ways in which it's been violated, and it can be considered a course of conduct. I think the Mel Reynolds case, even more so, says that you have... The state couldn't even identify the dates on which he was alleged to have had those sexual episodes. I think they were... sexual episodes, I believe the defendant referred to them as over a period of time. And yet, when the jury was given a general verdict on those three or four counts, I think it was, the court said that's okay, because it's part of a comprehensive transaction of his sexual episodes with the same victim as part of a similar course of conduct. And that was even over a longer period of time than alleged in this case. Isn't the standard, though, that we're looking at a little different in that it's really at the end of the day that a jury can return a single general verdict based on instructions providing alternative methods of committing a single crime as long as the alternatives are not so divergent that they are in fact separate offenses? You argued that in your brief, that these aren't so divergent. They're not divergent. And the divergent language comes from Shadd versus United States. And in Shadd, I mean, they were talking about the divergency in what they were referring to there covered the entire gamut. It went from, we're charging you with a crime, and from that can we discern if you committed stalking, tax evasion, jaywalking, totally different things. In this case, you don't have that. This defendant is charged with committing a violation of an order of protection in three different ways. He knows those three different ways. He knows those three different dates on which he was alleged to have done them. He knows the conduct that was involved in it. He's aware and on notice that you're talking about three different dates. So I don't think they're so divergent at all. But that's what we have to look at. Again, because it's one order of protection. It's the same order of protection. Well, explain this to me, not on that issue, but how do you reconcile the violation of the order of protection count as not being a lesser included offense of aggravated stalking? Okay. You have to, for purposes of One Crime One Act, under King, you analyze under the abstract elements approach. The abstract elements approach does not take into account the charging instrument, the facts of the case, or the evidence. It simply looks at, you open the statute book, and you look under the statute book, under the abstract elements test, and you determine whether or not aggravated stalking or violation of order of protection can be a lesser included aggravated stalking. It has to be, under People v. Miller, impossible, impossible, looking at the statutes, to not commit the greater without also committing the lesser. Well, in this case, didn't you have to establish a violation of an order of protection in order to have an aggravated stalking conviction? That would be under the charging instrument approach. This is a general principle. Yes, correct. The aggravated stalking conviction was premised on violating an order of protection. However, when you analyze, for purposes of the abstract elements approach, under King, to determine whether or not you have a lesser included offense, you don't look at the facts of the case. You don't look at what's charged in the objection. And that's what Miller says. Correct. And that's what Miller says. In Miller, how did they come out with saying one or the other? This wasn't or was a lesser included? They look at the abstract elements of the offense. They look at the statute in the book. What was going on in Miller? Explain that. Miller was the case where the defendant was charged with burglary, retail theft, and an aggravated assault for what he did. He went into a store and he had some items. They took him into a room and he pulled a knife. What happens in Miller is that the court decides that the charging instrument approach, which is property use, when you're determining whether a lesser included offense should be given or whether a lesser included jury instruction should be given or whether the defendant can be convicted of a lesser included offense, you look at the charging instrument approach. But it makes no sense to look at the charging instrument approach when you're determining whether multiple offenses can stand where one might be a lesser included. You look at the abstract elements approach. Under there they said theft is not a lesser included offense of burglary. Because looking at the statute, you can commit a burglary. You can commit a theft without also committing a burglary. Under the statutes here without any facts of this case. And no fact says that the abstract elements approach does not consider any of that. So if you look at aggravated stalking in the statute, you don't have to commit an order of protection, a violation of an order of protection, in order to be convicted of aggravated stalking. For that reason, under the abstract elements approach, which should be used here, violating an order of protection is not a lesser included offense under that approach of aggravated stalking. The other crimes evidence with respect to that, the trial judge, first of all, the trial judge considered what was being presented. The state filed a motion to eliminate with respect to what they wanted to present. The trial judge weighed the substantial prejudicial effect versus the appropriate value and found that the evidence was properly admitted. The question is whether or not she abused her discretion into that. What you have, the state has to prove, an integral part of the state's case is they have to prove that the defendant had the intent to commit the charged offenses. He doesn't have an innocent frame of mind. He doesn't have an innocent sense of what he's doing. His theory of defense was like this was all one big misunderstanding. You know, I'm getting divorced. I'm in the middle of an ugly divorce. It's reasonable for me to want to talk to her. It's reasonable to want to go where she is. And with respect to Officer Tedeschi, we had to show that he had the intent. I mean, his theory of defense with respect to Officer Tedeschi was that he didn't know he was a police officer. It was completely exaggerated. It was overblown and it didn't occur. Based on that and based on the fact that the state needs to prove this defendant's intent with respect to those charged offenses, the trial judge allowed the state to introduce evidence of a phone call that was received on December 8th while defendant was in violation of bail bond in Hawaii and they were allowed to play some of those clips for the jury. They were also allowed to introduce that during a time period from I believe November to December that a phone that they believed was used by defendant was used to make 1,500 phone calls or whatever to her place of business, her offices, all those different places. Why don't you just pile it on though? Couldn't you just put in that one phone call and just show the intent? Why did you have to show the 2,000 other phone calls? Why did you have to show the intent? I think with respect to the police officer, because the defense was that it was an exaggeration and that he didn't know he was a police officer, the fact that the defendant is subsequently calling him pretending that he's a detective from Area 3 and wanting to talk to him about the charges against Joseph Costa shows that in fact the aggravated battery against Officer Tedeschi, the defendant had the intent to commit that offense and it wasn't a mistake. That was the other case, wasn't it? No, that was this case. Well, they were tried jointly to which the defendants agreed, but he did not agree to the introduction of evidence. That's correct. He didn't get to it. How many times was the jury advised that they were to consider it solely for the purpose of intent? Repeatedly. They were advised at the outset of the victim's testimony. They were advised right when Officer Tedeschi began to talk about it. They were admonished again during their instructions and in fact in closing argument during rebuttal. And it's interesting because the defense attorney spoke about it in detail during his closing argument. I'm sorry? Is the improper introduction of evidence of other crimes subject to the harmless error rule? Yes, it can be. It can be. And in fact during his rebuttal, the prosecutor made it very clear how they were to consider this evidence. Not as evidence of his guilt of the charged offenses, but relative to his intent and motive. And the facts of the additional other crimes evidence went to establish the defendant's intent and his motive in committing the charged offenses. If you find that it was, again as Justice McBride has pointed out, it is subject to a harmless error analysis and we would ask you to find that if you find it wasn't proper that it was harmless. We don't believe it was. There was some necessary detail that had to be included as a result. Ms. Gaines, if I could, sorry but I want to take you back to the unanimity thing for just another minute and that is because I want you to discuss the Holmes case with us because it seems to me that almost as a tacit admission, the defense today is saying, well, recognizing that Diaz and Reynolds doesn't help them, they're kind of asking us to ignore those cases because the Holmes case was decided and that somehow the Holmes case ends that analysis. One of the biggest problems with the Holmes case is that the counts that he was charged with and instructed on, both were, one was factually not viable and the other one, the trial judge didn't allow the defendant the opportunity to present any evidence which would have allowed it to have been viable. So both the counts were factually inadequate. She's also putting, with respect to the Holmes decision, she's tying in a unanimity argument for purposes of whether or not a lesser included offense could have been uncharged can now be supported and sustained by what the jury's verdict was. The court said, we won't, we can't impose a conviction on a lesser included offense when you can't tell from the verdict which count the defendant was convicted of. It's within the context of determining whether or not the defendant could be held, could be found guilty of a lesser included offense that they looked at that unanimity requirement. But the unanimity requirement in that, there was a complete problem and a complete breakdown for evidentiary purposes with those counts. But you think it's a different context with regard to the misdemeanor argument? Right. You can't, you don't have that in this case at all. You're not looking at these verdicts in terms of determining whether some uncharged conduct which wasn't an element of the offense or not considered by the jury in determining this defendant's guilt, whether that affects a lesser included offense. You just don't have that factual situation. And I don't think even by analysis you can compare. Let me ask you before you sit down what the state's final position is on the Scott case. Is it distinguishable? Should we disregard it? Where are you at? I think the Scott case is distinguishable in that it was three, the disconnect there factually I think is what distinguishes it. Because you have three separate counts, three separate drug transactions, three separate officers, three separate unrelated acts. In the present case you don't have that. You have one order of protection, one victim, just multiple means by which the defendant can be convicted of the offense. So you're not saying that we need to disregard it? You think it's distinguishable? For the reasons today I've argued and for all the reasons in my brief, we would respectfully ask that you affirm the defendant's convictions for aggravated stalking, violating order of protection, and aggravated battery. Thank you. Ms. Mueller, brief response? Just a few points. As to the Scott case, it's a basic part of fundamental fairness, the right to a fair trial for the jury to be properly instructed. The Scott case and Illinois Supreme Court Rule 451C. As to Holmes, the Holmes case, again... I need to ask you a question about that. The existence, if we were to say that it was an error, since it deals with jury instructions and unanimous jury verdicts, are you saying that that's an automatic reversal or do we have to look at the context in which, in order to decide if it's plain error, are we supposed to go further and look at the context in which it happened and how much did it affect the fairness of the proceeding or is it just a per se deal? Yeah, it is a substantial defect and I'm arguing that it requires reversal under the second prong. In the Holmes case, I might have misstated this before, but the jury wasn't allowed to hear any evidence about the void card. So in rejecting the state's request to enter UUW on the misdemeanor, the court said, because the jury returned a general verdict, we cannot say the jury unanimously concluded, as alleged in count one, that the gun was loaded and it was immediately accessible, which would be one of the exceptions to the UUW misdemeanor. The jury may have based its verdict on a unanimous determination that the defendant lacked a void card, the aggravating factor alleged in count two, or the verdict may have been based on some members agreeing with count one and some with count two. And that is why I'm arguing that it's relevant here. And the Diaz case, I am actually arguing that it supports my position. When they address the Scott case there, they say Scott is distinguishable. The conduct giving rise to the aggravated battery issue at issue in Diaz arose from one transaction or series of connected acts, whereas in Scott, the defendant's crimes were predicated on three different sales or transactions. The state concedes there is a difference between mental state cases, methods that we discussed, and transactions, separate conduct. There's simply no difference here between three acts of selling drugs to undercover cops and three acts of violating an order of protection. They're both completely on point. Three separate transactions, three separate conducts. And in that regard, I believe that the problem with the unanimous jury verdict is that issue here. As to the one act, one crime issue, the abstract element test, you must look at the statutory elements of the charged offenses. What he was charged with here is subsumed, the violation of an order of protection is subsumed in the aggravated stalking charge. You don't need to get into the specific facts that are charged as you used to under the charging instrument test, but you do have to look at the actual elements that are charged. And lastly, just as to the other crime evidence arguments, some of the evidence here is that the state went too far. Mr. Costa didn't testify, so it's kind of disingenuous to say that he was claiming anything. And to use the defense attorney's attempt to minimize the damage from all of this other crimes evidence in his closing argument, that's improper. It can't be used to excuse the excess that the state went to here. There's no further questions? Thank you. Your case was well argued and well briefed and we'll take it under advisement.